DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| GUAM INDUSTRIAL SERVICES, INC d.b.a. GUAM SHIPYARD, and MATTHEWS POTHEN,<br><br>    Plaintiffs,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a corporation, and STARR INDEMNITY & LIABILITY COMPANY, a corporation,<br><br>    Defendants.<br>_____<br><br>ZURICH AMERICAN INSURANCE COMPANY, a corporation: and STARR INDEMNITY & LIABILITY COMPANY, a corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>GUAM INDUSTRIAL SERVICES, INC. d.b.a. GUAM SHIPYARD; MATTHEWS POTHEN; THE UNITED STATES OF AMERICA, by and through the Secretary of Transportation for the Maritime Administration,<br><br>    Defendants.<br>_____ | CIVIL CASE NO. 11-00014<br><br><br><br><br><br><br><br><br><br>As consolidated with<br><br><br>CIVIL CASE NO. 11-0031<br><br><br><br><br><br>ORDER<br>RE: SANCTIONS |

On April 15, 2013, the court granted Defendants' request for sanctions regarding its motion to compel a limited video inspection of the dry dock Machinist which the court had previously ordered on October 31, 2011. Pursuant to the court's instructions, Defendants filed

their affidavit of fees and costs on May 3. Plaintiffs filed an opposition and objection to Defendants' request for money sanctions on May 10. Defendants filed a reply to the opposition on May 22.

## BACKGROUND

On October 15, 2011, Defendants filed a motion for a limited inspection of the floating dry dock, Machinist. Plaintiffs opposed the motion. After a telephonic hearing, the court granted Defendants' request and ordered that Plaintiffs make the dry dock Machinist available for inspection by J. Arthur Waddington on November 3, 2011. In addition, the court ordered that a local videographer/photographer with no ties to Defendants be allowed to accompany Waddington for the purpose of videotaping the inspection.

Defendants were not able to videotape the inspection conducted on November 3, 2011 and brought a motion on July 13, 2012 to compel the video inspection of the dry dock. In their motion, Defendants also requested sanctions for Plaintiffs ' failure to allow the video taking to take place. The court heard the motion on August 29, 2012 and granted Defendants' request to compel the video inspection of the dry dock but took the request for sanctions under advisement.

On April 15, 2013, the court granted Defendants' request for sanctions. In keeping with the sanctions order, Defendants filed their affidavit[1] alleging that their reasonable costs and attorneys' fees were $12,259.00. Plaintiffs filed an opposition and objection to Defendant's money sanctions request.

The award of sanctions that the court has ordered stems from its discovery order of October 31, 2011. Therein, the court granted a motion by Defendants and ordered GISI to have its dry dock, the Machinist, available for a limited inspection by J. Arthur Waddington on November 3, 2011. The court also ordered that a local videographer accompany Waddington for the purpose of videotaping the inspection. The inspection was limited in its scope to those "compartments or tanks of the Machinist...identified...at the hearing, which ...Waddington was

---

[1] See affidavit of Thomas C. Sterling filed herein on May 1, 2013.

previously unable to inspect in order to complete his work of determining the appropriate scope of work and cost of refloating and repairing the Machinist". Since GISI's facilities were located within Naval Base, Guam, the court issued a separate order directing GISI to issue a letter of sponsorship to inform the United States Navy that the individuals named in the sponsorship letter were "invitees" of GISI for purposes of the inspection order. In its order, the court emphasized that the four individuals named in the sponsorship letter were entirely responsible for meeting any and all other entry and security requirements that Navy imposed.

Prior to the inspection date, counsel for GISI sent an email to Defendants' counsel recommending that Defendants clear the video taking matter with US Navy security. This recommendation was based upon information GISI provided to counsel that pictures or videos taken within the base were subject to and at the discretion of the Navy and a camera permission slip had to be obtained. In the meantime, GISI issued a memo[2] to its security personnel not to allow video and camera equipment into the GISI facility unless it came with a camera pass.

On November 3, 2011, the day of the inspection, Defendants' representatives (Plaintiffs' invitees) appeared at the naval base security office, the Visitors Control Center (VCC). The VCC had been previously informed that certain individuals were coming to the "Machinist" dry dock for the purpose of conducting a limited inspection and at the same time video taping the inspection. The VCC had been apprised by Defendants of the nature and purpose of their entry into Navy base and provided a copy of the October 31, 2011 court order. The VCC was specifically made aware that Defendants intended to video the Machinist and that Mr. Castro had his video equipment in one of the cars entering the base facility. The VCC issued the necessary passes and the individuals then proceeded to GISI's facility.

When the individuals came to the GISI facility, they were asked if they had secured a camera pass. Since there was no camera pass, the video and camera equipment were not allowed within the facility. Thus, the inspection on board the Machinist went forward on November 3, 2011 without the video taping of the inspection as ordered by the court.

---

[2] See Memo dated November 2, 2011 from Administrative Manager to G4S Security.

DISCUSSION

In opposition to Defendants' sanction request, Plaintiffs again argue that a monetary sanction is not appropriate since Plaintiffs' conduct regarding the discovery order was substantially justified.

GISI's conduct in failing to allow the video inspection was based upon its understanding of 18 U.S.C. §§795, 797, and CFR §705.5. Based upon the two statutes and the regulation, GISI had a reasonable belief that a camera pass was required. Whether or not the Navy actually enforced these statutes or regulation, GISI should not be punished for what it reasonably understood to be its security obligations.

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides for the various sanctions that are available when a party does not obey a discovery order. Instead of or in addition to those sanctions, Rule 37 (b)(2)(c) provides that the court "must order the disobedient party, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure" unless the court finds that the failure was "substantially justified or other circumstances make the award of expenses unjust".

It is not disputed herein that GISI did not obey a discovery order. Thus, sanctions are appropriate against Plaintiffs. In order to avoid the sanction mandated under the Rule, GISI must show that its failure to comply with the discovery order was "substantially justified". Was GISI substantially justified when it refused to allow the video camera which was brought to the dry dock for video taping the inspection of the Machinist because of a reasonable belief on its part that it was part of the security requirements of the Navy?

In *Pierce v. Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988), the U.S. Supreme Court resolved the meaning of the phrase "substantially justified". The phrase does not mean "justified to a high degree", but is satisfied if there is a "genuine dispute" or "if reasonable people could differ" as to the appropriateness of the contested action. Substantial justification means "justified in substance or in the main", i.e., "justified to a degree that could satisfy a reasonable person". The standard for its determination is no different from the "reasonable basis in law and fact" formulation adopted by the Ninth Circuit Court and the vast

majority of the other Courts of Appeal.

In *Pierce*, the Supreme Court carefully pointed out that its analysis did not convert the statutory term "substantially justified" into a "reasonably justified' analysis. A finding that a party is substantially justified does not depend on that party's position being substantially correct. A party's position "can be justified even though it is not correct" and its "position can be substantially ( i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact".

GISI's response to sanctions request has been that it had a reasonable belief that a camera pass was required. At the time of the discovery order, there were no reference sources or other guidance that it could have used to determine if a camera pass was actually necessary. GISI's belief was based upon its reading of two statutes and a regulation which governed video taking within naval facilities. GISI should not be penalized for then understanding and interpretation of the statutes and regulation, especially since the court has now made it clear to GISI that the statutes and regulation which it has relied upon has no application.

Reasonable belief, however, is not the standard of review or analyses under Rule 37. The substantially justified standard is not met merely because GISI reasonably believed that a camera pass was required. In order to meet the substantially justified threshold, GISI must show that its position was justified in substance or in the main to a degree that would satisfy a reasonable person. Or put in another way, GISI's position would be substantially justified if a reasonable person could think its position was correct because it had a reasonable basis in fact or law.

A reasonable person is a hypothetical person used as a legal standard. It is a person who exercises the degree of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own and of others' interest[3]. Was GISI's position herein one that could have satisfied a reasonable person?

GISI's President and Chief Operating Officer testified that there was no specific

---

[3] See reasonable person definition, Black's Law Dictionary, Ninth Edition.

directive from Navy that required the company to impose a camera pass for any person or entity desiring to take pictures or video at the dry dock facility. He did say that he was required to follow security requirements on the premises which were imposed by law or regulation because of its lease agreement with GEDA. Thus, GISI imposed a camera pass requirement issued by the VCC in order to bring video equipment into the GISI facility. Did GISI's position on the camera pass have a reasonable basis in law? GISI refers to the prior referenced statutes and regulation as the basis for its position.

      18 U.S.C. §795 makes it a criminal offense to take photos in installations designated by the President as vital military and naval installations or equipment. 18 U.S.C. § 797 makes it a criminal offense to publish or sell photographs taken of vital military or naval installations or equipment. 32 CFR §705.5 governs the taking of photos on board naval ships, aircraft and installations by the general public. Visitors are prohibited from taking photographic equipment on board a naval ship or aircraft or into a naval activity or to take photos within a naval jurisdiction unless specifically authorized by the officer in command or higher authority. Guests of the Navy who wish to take pictures within naval jurisdictions will be advised of areas where photography will be permitted.

      Would a reasonable person believe that a camera pass was required to enter the dry dock area to video tape the inspection at the Machinist? The statutes and regulation cited by GISI deal with taking photographs within a vital military and naval installation or equipment, taking photographs on board a naval ship, aircraft, and naval installations in general. The scope of the federal mandate applies in general to a naval operation activity, i.e., an area where there is Naval jurisdiction, as in a naval ship, an aircraft, a vital military and naval installation and the like. Naval jurisdiction would encompass those areas within a naval facility where it maintains complete and 100% control. In looking at the above-referenced statutes and regulation, the reasonable person would conclude that those mandates apply solely to military owned or controlled activities. When compared to the activities that occur at GISI's dry dock, a reasonable person would conclude that GISI's activities are private in nature and generally not subject to the control of the Navy. The reasonable person would conclude that GISI is not

government-owned but privately-owned.  Moreover, the reasonable person would conclude that GISI is a privately owned and operated institution as opposed to the naval installation which is government- (military)-owned and government-operated.  A reasonable person would further conclude that the Navy would have no interest in the dry dock's operation.  A reasonable person would also conclude that taking a video of an inspection at the Machinist would not be the taking of a photograph on board a naval ship or an aircraft.  Moreover, GISI is not a naval installation.  Based upon a reading of the pertinent statutes and regulation, the court finds that GISI's position that a camera pass was needed to video tape within its premises could not be correct because it did not have a reasonable basis under the law.  Thus, its position in denying access of the video equipment unto their premises based upon its belief that a camera pass was required could not be said to be substantially justified.

Furthermore, GISI's position could not have had a reasonable basis in fact.  The papers filed herein clearly show that the GISI's invitees went through VCC[4] and were not required to procure a camera pass.  Had there been a Navy policy which prohibited the bringing of video equipment into the GISI premises without a camera pass, VCC would certainly have issued one.  But none was issued by VCC.  Furthermore, the invites were personally escorted to the GISI facility by Mr. David Dimmick, its Deputy Security Officer, who was aware of the video taking that was to occur within the GISI facility.  GISI argues that it had a duty to enforce and comply with Navy regulations regarding taking photographs within the naval installation because it did not have physical control of the use of the camera from the time of its entrance within the gate to the GISI facility.  It is argued that the videographer could be taking pictures during the interim.  The court does not find this position reasonable because the cameras were to be used only for video taking the inspection at the Machinist and nothing else.  There was no court authorization for video taping anything else but the inspection at the Machinist.

Thus, the court thus concludes that GISI's failure to allow the camera into its facility based upon its reasonable belief that a camera pass was required was not substantially justified.

---

[4]See Sterling affidavit filed on July 13, 2012.

Since the court has determined that Plaintiffs' conduct was not substantially justified, the court must next determine whether there are other circumstances that exist that make an award of expenses unjust.

In addressing this issue, the court notes that Defendants did not immediately file a motion to compel after the November 3, 2011 failed video inspection. Defendants spent time trying to determine whether the Navy had any objections to the video taping on board the Machinist and whether there was a camera pass requirement. Defendants produced a letter addressed to Defendants' counsel which came from D.W. Hopkins of the Navy legal department. The letter advised Defendants that the Department of the Navy had no objections to the discovery order. Specifically, the letter made reference to the "videographer/photographer" video taping the inspection. The letter[5] was issued by the Department of the Navy by direction of the Commander. Based upon this letter, Defendants inquired whether Plaintiffs were now willing to allow a video taping of the Machinist, short of seeking court intervention. Plaintiffs responded that the letter was not conclusive of the issue.

The court takes cognizance that Plaintiffs had an opportunity to avoid the sanctions that are being sought had they allowed Defendants to come back to its facility to do the previously ordered video taping. However, Plaintiffs placed no reliance upon the Department of the Navy's letter. Plaintiffs responded that the Department of the Navy's response to Defendants' counsel was not dispositive of the issue. Having been apprised of the Navy's position relative to the video taping on board the Machinist, Plaintiffs should have inquired with Navy whether a camera pass was indeed needed or whether their policy was sound. If the Navy were letting its position known to Defendants that it had no objections to the video taping and Plaintiffs were insisting on Defendants procuring a camera pass, it would appear to the court that Plaintiffs may not have been acting in good faith. At a minimum, it should have checked with Navy regarding its camera pass policy. Moreover, GISI had been placed on prior notice that their "invitees"

---

[5] See Exhibit "A" of Supplemental Affidavit of Thomas Sterling, filed August 17, 2012.

Page -8-

went through Mr. Dimmick, VCC's Deputy Security Officer, to obtain their entry passes and he saw it fit not to issue any camera pass even though he knew that video taping was going to take place on board the dry dock.

As the court has pointed out above, Plaintiffs seem to be insisting that Defendants get a camera pass from Navy when Navy did not believe that it was necessary or required. That being the case, it can not be said that there was a "genuine dispute" between Plaintiffs and Defendants because the camera pass was one that had to be issued by Navy. Plaintiffs have taken lightly the existence of the court order authorizing the video taping on board the Machinist and Plaintiffs have also taken lightly the Department of the Navy's position that it had no objections to the video taping on board the Machinist. What else must be provided Plaintiffs to seriously consider the repercussions of a failure to comply?

Based upon the above considerations, the court finds that there are no other circumstances that exist that would make an award of expenses unjust. Therefore, the court finds that sanctions are appropriate herein.

### Reasonable Fees and Costs

GISI also objects to the $12,259.00 amount claimed by Defendants as their reasonable fees and costs. The amount claimed is said to be unjust because it is unreasonable for the services performed. It also alleged that the amount spent on the motion and inspection was unreasonable and that the billing rate was unreasonable for some of the services performed. Plaintiffs ask the court to disregard the $12,259.00 amount requested as excessive and substitute it with a reasonable amount.

In a Rule 37(b)(2)(c) sanction, the court must order the party not complying with the court order to pay all the expenses including a reasonable attorney fee incurred by the moving party as a result of the failure to comply. This includes the expenses incurred in the motion for sanctions.

In his affidavit, Defendants' counsel, Thomas C. Sterling, states that Defendants' reasonable attorney fees are $12,259.00. In order to assess the reasonableness of the request, the court has divided Defendants' billing into four groupings. The four groupings represent the

hours spent in preparation and filing the motion; the hours spent for purposes of filing its reply memorandum; the hours spent in preparation for the court hearing and attendance; and the hours spent subsequent to the issuance of the court order compelling the video taking. The request for costs also includes a charge of $471.50 which represents a charge for a GRT equivalent payment.

Counsel spent 21.95 hours in preparation for filing the motion. Some of these hours were spent making inquiries from the Navy regarding GISI's camera pass policy. Some hours were spent attempting to arrange a video taping session on the Machinist without court intervention. Some hours were spent in consultation with co-counsel and in research and preparation in filing the motion. Plaintiffs argue that the true value of the motion might more reasonably be $1000-$1500.00. This argument, however, fails to take into consideration the efforts made by Defendants in evaluating and rebutting Plaintiffs' position regarding the camera pass. Defendants also met and conferred with Plaintiffs prior to filing the motion. The court finds that the motion to compel was not the typical motion. It was not a matter of determining relevancy or privilege for discovery purposes, but rather the failure to comply based upon the disobedient party's belief that a camera pass was necessary in order to allow the video equipment into its premises. In reviewing Defendants' billing, there were items included which dealt with emails from among counsel. The court will exclude from the total amount claimed a reasonable amount of hours that it believes was spent in consultation among counsel as well as those hours not found reasonable. Based upon these considerations, the court finds that 15 hours would be reasonable for the motion undertaking and will disallow 6.95 of the hours claimed therein.

Similarly, the court finds that Defendants spent 13.2 hours in formulating its reply to Plaintiffs' opposition. The court will reduce this number by two (2) hours. Plaintiffs filed several pleadings in opposition to the motion to compel and sanctions. The court finds that 11.2 hours would be a reasonable number of hours to have spent on the reply.

Likewise, Defendants billed 3.3 hours for preparation and attendance in court for the motion hearing. The court will reduce this number by .3 hours.

Finally, Defendants billed 8.7 hours for worked performed after the motion hearing. The court will reduce this number by two (2) hours.

The court will therefore allow a total of 35.9 hours of the submitted billing as Defendants' reasonable costs and attorneys' fees. Taking 35.9 hours and multiplying that amount by Mr. Sterling's hourly rate of $250 equals the sum of $8,975.00. Defendants have added a GRT equivalent amount to their costs and desire to pass this cost to the Plaintiffs. The court will not impose the equivalent GRT amount upon Plaintiffs. The court therefore finds that Defendants' reasonable costs and attorney fees in this matter is the sum of $8,975.00. The court hereby orders Plaintiffs to pay this amount within 30 days.

## CONCLUSION

The court has considered Defendants' request for their reasonable costs and attorneys' fees herein, as shown in the affidavit of their counsel Thomas C. Sterling, filed on May 1, 2013. The court has also re-considered Plaintiffs' opposition to the sanctions request and their arguments that their conduct was substantially justified, or in the alternative that Defendants' requested amounts were not reasonable costs and fees. Based upon the reasons stated herein above, the court finds:

1. Plaintiffs failed to comply with a court order which required the video taking of an inspection on board the dry dock Machinist on November 3, 2011.

2. Plaintiffs' belief that a camera pass issued by VCC was required prior to entry into the GISI facility was not substantially justified because their belief had no reasonable basis in law and fact.

3. There exists no other circumstances which would make an award of expenses unjust.

4. Defendants are entitled to receive from Plaintiffs the sum of $8,975.00 as their reasonable costs and attorneys' fees. Plaintiffs shall make this payment within 30 days of this order.

/s/ Joaquin V.E. Manibusan, Jr.
U.S. Magistrate Judge
Dated: Aug 26, 2013